**IN THE COURT OF APPEALS OF IOWA**

No. 25-1404
Filed December 17, 2015

**IN THE INTEREST OF A.C.,**
**Minor Child,**

**C.C., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Judge.

        A mother appeals the termination of her parental rights to one child. **AFFIRMED.**

        Myia E. Steines of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, for appellant mother.

        Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

        Kristy L. Hefel, State Public Defender, Dubuque, attorney and guardian ad litem for minor child.

        Considered without oral argument by Chicchelly, P.J., and Buller and Langhholz, JJ.

**BULLER, Judge.**

A mother appeals termination of her parental rights to a child born in 2024. Because the father does not appeal, we focus almost entirely on facts relating to the mother and the child. We reject the mother's best-interests claim, request for additional time, and permissive-exception claim.

**Background Facts and Proceedings.** To quickly sum up the mother's four previous termination cases, the Iowa Department of Health and Human Services (HHS) first became involved with this family in April 2021 after the father strangled the mother in the presence of two of the child's older siblings. Between December 2022 and September 2023, all four of the child's older siblings were removed and adjudicated as children in need of assistance (CINAs) after HHS found numerous child abuse allegations credible. In January 2025, the juvenile court terminated the parents' rights to older siblings under Iowa Code section 232.116(1)(f) and (h) (2025). The mother appealed, and a panel of this court affirmed. *In re T.K.*, No. 25-0424, 2025 WL 1704330, at *4 (Iowa Ct. App. June 18, 2025).

In November 2024, the child at issue here was born. The child was born with a hole in her heart and a chronic respiratory condition, and she spent a month in a neonatal intensive care unit (NICU). Despite notice and opportunity, the mother didn't attend any of the child's follow-up medical appointments. Medical personnel explained to the HHS worker who attended the appointments that the child's condition is aggravated by cigarette smoke. The mother smoked cigarettes through termination, but she disputed whether HHS told her to quit smoking.

On the same day the child was born, the juvenile court ordered temporary removal under Iowa Code section 232.95. The court also appointed a guardian ad litem (GAL). HHS placed the child in foster care. And in early 2025, the juvenile court also adjudicated the child as CINA. After a dispositional hearing, the court ordered the mother to maintain suitable housing and employment, participate consistently in mental-health services, and cooperate with HHS and providers.

The mother had been living at a shelter in Dubuque since October 2023. In March, the mother moved out of the shelter and into a friend's home in Eldora, closer to the mother's family. While staying with her friend, the mother refused to allow HHS or other service providers to inspect the house. The mother attempted to secure income-based housing, but the application required proof of income, and she didn't resume working until June. In June, the mother moved to the child's maternal great grandmother's house, which HHS had previously determined was unsafe for children. The day before the termination hearing, the child's maternal grandmother moved into a new house and suggested the mother could stay there until her income-based housing application was approved.

As to the mother's mental health, she participated in an intake appointment and a single therapy session before termination. She also never progressed beyond supervised visits with the child. HHS, service providers, and the GAL all expressed concerns with the mother's ability to independently care for an infant as of trial or in the near future. The GAL questioned the mother's "ability to internalize the parenting skills needed to care for an infant, especially one with chronic respiratory issues, without constant supervision and additional assistance." During visits, HHS required the mother to change into fresh clothes and wash her face

and hands before interacting with the child to limit the child's exposure to cigarette smoke. In April, during a supervised visit, the child had to be rushed to the emergency room after she started coughing, drooling, and turning red in reaction to residual cigarette smoke on the mother. The mother panicked and the grandmother and foster parents had to intervene to suggest medical intervention.

The child has lived with the same foster family since leaving the NICU. And the child is well adjusted and bonded to the foster family. The foster parents take excellent care of the child and are open to adoption.

The county attorney, HHS, and the GAL recommended termination of parental rights. The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(g) and (h). The mother appeals, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

**Best Interests.** Because the mother does not contest the statutory grounds for termination, we consider first whether termination is in the child's best interests. *See, e.g.*, *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). In assessing best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The mother's petition on appeal conflates best interests with the permissive bond exception at section 232.116(3)(c). *See, e.g.*, *In re L.A.*, 20 N.W.3d 529, 534–35 (Iowa Ct. App. 2025) (en banc) ("Conflating the [best-interests] and [permissive-exception] steps based on a claimed bond with the child is not uncommon."). To the extent she urges the bond is independently relevant to her best-interests argument, we are not persuaded it shifts the calculus. We, like the juvenile court,

find termination is in the child's best interests. The child's respiratory system is so compromised that the child had to be admitted to the emergency room after being aggravated by the residual smoke on the mother's clothes and hair during a visit. Yet the mother has not quit—or even cut back on—smoking cigarettes despite HHS discussing the safety risk to the child with her. And the mother seemed unable to care for the child during this medical emergency without direction from others. In contrast, neither we nor the juvenile court have any concerns about the foster parents providing for the child's medical needs.

Also, the mother's housing situation remained unstable. Before moving in with the great grandmother, the mother was living temporarily with a friend and refused to allow HHS entry to inspect the home for safety concerns. And the great grandmother's house was already deemed unsafe for children. The GAL also questioned the mother's ability to care for a chronically ill child, given her poor parenting skills and failure to attend the child's medical appointments. Meanwhile, the child is well-integrated into the foster parents' home, and they understand and address her medical needs. Termination is in the child's best interest.

**Bond Exception.** The permissive bond exception permits the court to decline termination if "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The mother bore the burden to prove this exception by clear and convincing evidence. *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). And error preservation requires a court to rule on a claim before we can decide it on appeal. *E.g.*, *Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002). Here, there was a passing mention of a bond at trial, but no argument or ruling on this issue, so no preserved error for

us to review. And even if error had been preserved, we wouldn't thwart termination because of the stability and safety afforded the child by termination and adoption given this child's unique medical needs and the mother's unwillingness to change her behavior to address them. *See* Iowa Code § 232.116(3)(c).

**Six-Month Extension.** The main thrust of the mother's argument is that the juvenile court erred by declining to grant a six-month extension of time for her to work toward reunification. We assume without deciding that the mother adequately preserved this issue. She frames her move to Eldora in March 2025 as forcing her to reset case expectations and asserts that, if given an extension, she would continue to be compliant and cooperative with HHS and service providers. But the mother was not adequately cooperating with HHS after the move. She refused to allow HHS to inspect her housing in Eldora, and she only attended a single therapy session for more than eight months. She also never quit smoking despite the child's respiratory condition. HHS, the GAL, and a provider reported concerns with the mother's ability to independently care for an infant despite years of HHS involvement. The mother has not moved beyond supervised visits or made the necessary case progression. *Cf. In re L.H.*, 13 N.W.3d 627, 629 (Iowa Ct. App. 2024) (noting the parent "never progressed beyond fully-supervised visits, which also prevented an immediate return of custody."). On these facts, we see no basis on which the court could have found the need for removal would no longer exist after six months to justify an extension. *See* Iowa Code § 232.104(2)(b).

We affirm the termination of the mother's parental rights.

**AFFIRMED.**